IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| 5K UTILITY AND CONSTUCTION, INC. | ) | Case No. 309-05808 |
| | ) | Chapter 11 |
| Debtor. | ) | Judge Lundin |
| | ) | |

## PLAN OF REORGANIZATION OF THE DEBTOR
## FILED THE 1st Day of November, 2009

This plan is a Plan of Reorganization (the "Plan") to be executed in accordance with the provisions of 11 U.S.C. Section 1123(a)(5). It is submitted by the Debtor (hereinafter "Proponent" or "Debtor"). The purpose of the Plan is to continue the operation of the business of the Reorganized Debtor by using proceeds derived from the operation of the business, restructuring the secured debts which reduces the Debtors' cash flow for debt service, increasing the Debtors' ability to expand its business, allowing stabilized growth and income.

### ARTICLE I. -  DEFINITIONS

All terms used in the Plan shall have the same meanings as set forth in the Code, unless specifically defined to the contrary herein.

The following terms, when used in the Plan, shall, unless the context otherwise requires, have the following meanings:

1. <u>Allowed Claim</u>: A claim set out in the schedules of the Debtor, or a claim with respect to which a proof of claim has been filed, as to which no objection to allowance thereof has been interposed within the applicable period or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding, and as to which no appeal or certiorari proceeding is pending.

1

2. <u>Bankruptcy Code or Code</u>: The United States Bankruptcy Code 11 U.S.C. Section 101, et seq.

3. <u>Bankruptcy Court or Court</u>: The United States Bankruptcy Court for the Middle District of Tennessee, Nashville Division.

4. <u>Claim</u>: A right against the Debtor within the meaning of Section 101(4) of the Code.

5. <u>Class</u>: Any class into which the Allowed Claims are classified.

6. <u>Confirmation of the Plan</u>: The date upon which the order confirming the Plan is entered.

7. <u>Substantial Consummation of the Plan</u>: Sixty days after the Effective Date of the plan, the initial plan payments will have been made and, absent further order, the plan will be deemed substantial completed. At such time, an appropriate application for a final decree will be filed, and this case will be closed.

8. <u>Debtor</u>: 5K UTILITY AND CONSTUCTION, INC.

9. <u>Effective Date</u>: The date upon which the order confirming this Plan of Reorganization becomes final and nonappealable.

10. <u>Executory Contracts</u>: Any and all executory contracts or unexpired leases to which the Debtor is a party subject to assumption or assignment pursuant to Section 365 of the Code.

11. <u>Insider</u>: Each person who is a present or former "Insider" o r "affiliate" of the Debtor pursuant to Sections 101(2), 101(25)(B) or 101(25)(E) or the Code, or any successor in interest to such person.

12. <u>Person</u>: Any individual, corporation, partnership, joint venture, trust, estate, or unincorporated organization, or any government or agent or political subdivision thereof.

13. <u>Petition Date</u>: The date upon which the Debtors' case was commenced, i.e. May 22, 2009

14. <u>Plan</u>: This Plan of Reorganization in its present form, or as it may be amended or supplemented.

## ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS

<u>Class 1</u>: Class 1 consists of the claims for costs and expenses of administration incurred by the Debtor after the Petition Date as each Claim is finally allowed or approved by the Court and all fees payable pursuant to 28 U.S.C. Section 1930. Class 1 Claims are not impaired.

<u>Class 2</u>: Class 2 consists of certain secured and unsecured claims held by governmental units and entitled to priority pursuant to Section 507(a)(7) of the Code as finally approved and allowed by the Court and priority claims for support. Class 2 Claims are not impaired.

<u>Class 3</u>: Class 3 claims consist of all claimants holding collateral for their claims. This class is broken into subparts.

<u>Class 4</u>: Class 4 consists of all remaining unsecured claims of creditors. The Class 4 Claims are impaired.

## ARTICLE III - TREATMENT OF CLASSES OF CLAIMS IN INTEREST

<u>Class 1</u>: Except for quarterly fees owed to the United States Trustee, which will be paid on or before confirmation, the holders of Class 1 Allowed Claims shall be fully paid within ten (10) business days of the latter of: (I) the entry and finality of an order of the Court allowing such claim or (ii) the Effective Date of the Plan, or as otherwise deferred by agreement between the holder of the Claim and the Debtor. Further, the Debtor shall continue to make post-confirmation quarterly fee payments of no less than of $325.00 per quarterly until the plan or whatever amount the

Case 3:09-bk-05808    Doc 134    Filed 11/01/09    Entered 11/01/09 12:05:23    Desc Main
Document    Page 3 of 15

Debtor is required to make under the fee schedule by the Office of the United States Trustee has been substantially completed and closed. Any administrative claims representing a liability incurred in the ordinary course of business of the Debtor may be paid in cash in the ordinary course of business of the Reorganized Debtor. Class 1 Claims include professional fees and reimbursable expenses. The Debtor estimates that it will have sufficient cash on hand as of confirmation to pay administrative expenses.

Class 2: The holders of Class 2 Allowed Claims will be paid in accordance with 11 U.S.C. Section 1129(a)(9)(c) in that the holder of the claim will receive on account of such claim deferred cash payments, over a period not exceeding six (6) years after the date of assessment of such claim, along with interest in a sufficient degree to provide to the claim holder the present value of such claim at the rate of 6% per annum. **Any claimants in this class will be paid in full on the Effective Date of the plan.**

Class 3: This class of claimants consists of all claimants holding collateral and/or security for its claims and to the extent that any claimant is not treated fully secured, then the balance of the claims of any claimants in this class shall be treated as a Class 3 unsecured creditor. There are the following claimants in this class.

Class 3A: Caterpillar Financial Services Corporation is a secured creditor of the Debtor holding a valid and properly perfected security interest in the following, which shall be collectively referred to as Collateral A.

    a) Caterpillar multi-terrain loader (serial number JWF01489);

    b) Caterpillar landscape rake (serial number DAS00859);

    c) Caterpillar brushcutter (serial number TAB01175); and

      d)      Caterpillar trencher (serial number JAJ01941).

Caterpillar's security interest in Collateral A is evidenced by an Installment Sale Contract (Security Agreement) in the original principal amount of $81,740.11, a properly recorded UCC financing statement, and an Assignment of Installment Sale Contract to Caterpillar (the "Collateral A Loan Documents").

Caterpillar Financial Services Corporation also holds a valid and properly perfected security interest in a Caterpillar 320 CL excavator (serial number PAB06200) ("Collateral B"). Caterpillar's security interest in Collateral B is evidenced by an Installment Sale Contract (Security Agreement) in the original principal amount of $120,726.21, a properly recorded UCC financing statement, and an Assignment of Installment Sale Contract to Caterpillar (the "Collateral B Loan Documents").

The Debtor shall make monthly payments to Caterpillar in the amount of its regular monthly payment of $4,911.43 per month, commencing on August 1, 2009, and shall continue monthly in accordance with all applicable terms of the Collateral A Loan Documents and Collateral B Loan Documents (collectively, the "Loan Documents"). The Debtor specifically ratifies all obligations and duties in the Loan Documents as between the parties and their successors.

Failure by the Debtor to timely make a monthly payment shall constitute a default in this agreement. If default occurs, Caterpillar may file with the Court a document entitled "Notice of Default". If payment is not made within ten (10) days after the date of filing of said Notice, the automatic stay of 11 U.S.C. Section 362 shall be vacated so as to allow Caterpillar to exercise its right as a secured creditor against the Collateral.

The Debtor agrees to maintain insurance on any and all collateral securing the Debtor's indebtedness to Caterpillar in full value of said collateral and to name Caterpillar as loss payee on

the insurance policy in effect.

Class 3B.     The secured claim of National City Bank (NCB) and National City Equipment Finance (NCEF) is to be treated as follows:

Debtor is indebted to NCEF pursuant to that certain [Term Loan Agreement], dated as of March 10, 2008 (the "Term Loan Agreement"), in the original principal amount of $1,608,672.78 as reflected by that certain Commercial Note. Pursuant to that certain Security Agreement, dated as of March 10, 2008, the Debtor granted a lien in all assets of the Debtor, which has been properly perfected through UCC filings in the Tennessee Secretary of State's office. As of the Petition Date, the indebtedness to NCEF under the Term Loan Agreement and related documents was comprised of the sum of (a) $996,585.27 in principal, (b) $31,699.17 in accrued interest (with per diem interest accruing at $200.71 per diem) and (c) delinquency of $128,174.92 as a result of failure to make the monthly payment of $32,043.73 for the months February, March, April and May 2009. This amount is based on the proof of claim filed by this claimant, the amount of which is disputed by the Debtor.

Debtor is further indebted to NCB pursuant to that certain Loan Agreement, dated as of April 10, 2008 (the "Revolver Loan Agreement"), in the original principal amount of $500,000 as reflected by that certain Line of Credit Note. Pursuant to that certain Assignment and Security Agreement, dated as of April 10, 2008, the Debtor granted a lien in all assets of the Debtor, which has been properly perfected through UCC filings in the Tennessee Secretary of State's office. As of the Petition Date, the indebtedness under the Revolver Loan Agreement was comprised of the sum of (a) $443,352.81 in principal and (b) $905.22 in accrued interest (with per diem interest accruing at $43.11 per diem). The Term Loan Agreement, the Revolver Loan Agreement, and related

documents and agreements are herein referred to as the "Loan Documents." This amount is based on the proof of claim filed by this claimant, the amount of which is disputed by the Debtor.

NCEF and NCB (collectively, the "NCB and NCEF" and each a "Lender") have properly perfected first priority security interests in all assets and personal property of the Debtor, including cash collateral as defined in the Bankruptcy Code, except with respect to certain isolated pieces of equipment reflected on specific UCC filings prior in time to the filings by the NCB and NCEF (collectively, the "Collateral").

Except as stated herein, the collateral of NCB and MCEF shall include all revenues, cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents in any form, including without limitation income, proceeds, products, rents or profits of property or cash arising from the Collateral and from the collection, sale, lease, disposition, use, or conversion to cash of any Collateral, or fees, charges, accounts, or other payments for the use or occupancy of the Collateral, and such other forms of property as are contemplated under 11 U.S.C. § 363, constitute cash collateral of the NCB and NCEF governed by Bankruptcy Code § 363, whether (a) NCEF's or NCB's liens or security interests (including, without limitation, any replacement liens or security interests) existed at the commencement of this case or arise thereafter pursuant to this Order or any other order of the Court or applicable law or otherwise, and (b) such property that has been converted to cash existed as of the Petition Date or arose or was generated thereafter (collectively, the "Cash Collateral"). The term "Collateral" herein shall include the Cash Collateral.

Commencing on the Effective Date of the plan and on a like day of each month thereafter for 36 months, the Debtor shall make total payments to NCB and NCEF in the amount of $10,000.00. On the 37th month following the Effective Date of the plan, the entire remaining balance due and

owing NCB and NCEF shall become due and payable. The Debtor shall remit the payments specified herein to the NCB and NCEF (Attn: Guy Spalding) in immediately available funds.

Further, NCB and NCEF are hereby granted first priority, valid, binding, enforceable, and automatically perfected replacement liens and security interests, and if necessary, adequate protection liens, in the Debtor's Cash Collateral, and in the Collateral as to which the NCB and NCEF held a validly perfected lien pre-petition, whether acquired before or after the Petition Date, whether now owned and existing or hereafter acquired, created, or arising, and all produce and proceeds thereof (except claims of the Debtor's estate against third parties pursuant to Chapter 5 of the Bankruptcy Code), and all accessions thereto, substitutions and replacements therefor, and wherever located.

The security interests and liens as granted in this Order shall be effective and perfected immediately and without the necessity of the execution or filing by the Debtor or the NCB and NCEF of a security agreement, financing statements, mortgages, deeds of trust, landlord lien waivers, licensee consents or otherwise.

Nothing in this Order shall be a preclusion or limitation as to any setoff rights, including such rights under 11 U.S.C. § 553, of the NCB and NCEF against Debtor, all of which rights are hereby preserved. Nothing herein contained shall be construed to alter, modify, or change in any respect the terms and conditions of the loan documents among the NCB and NCEF and the Debtor, or to waive the NCB and NCEF' rights to full payment of the obligations thereunder.

<u>Class 3C:</u> The secured claim of Wirth Business Credit which holds a 1st lien on the Debtor's Gorilla Hammers in the approximate amount of $69,293.73 which is secured to a value of $25,000.00 and the balance of the claim of approximate $44,293.73 shall be treated as a Class

8

Case 3:09-bk-05808    Doc 134    Filed 11/01/09    Entered 11/01/09 12:05:23    Desc Main
Document    Page 8 of 15

4 unsecured creditor. This Claim is fully allowable in this case and is not subject to any objections, counterclaims, setoffs or rights of recoupment. The monthly payment due said creditor on its secured claim shall be payment of $475.00, and this claimant shall be paid interest at the lesser of its original contract rate or 3.25% per annum. The payments contemplated herein shall commence on the **Effective Date** of the plan and on the 10th day of each succeeding month until the payments contemplated herein have been paid in full. The lien of this creditor shall be reinstated upon confirmation of the plan to the value of the secured claim as stated herein.

Class 4: Class 4 includes all remaining unsecured creditors not otherwise provided for under the plan. The Debtors' plan proposes to pay the total sum of $1,000.00 per month until the total amount of $60,000.00 has been paid to claimants in this class. The funds available for the allowed claims in this class will be paid, pro rata, amongst the claimants in this class.

In addition thereto, within thirty (30) days of confirmation of the plan, the Debtor shall provide file with this Court a list of all potential preference and avoidance actions in this case and potential determination for pursuing same. Creditors shall have an opportunity to object to the Debtor's recommendation. Upon final resolution of each of these matters the proceeds from this same shall be distributed, pro rata, amongst the allowed claimants in this class, after payment of the administrative claims for pursing these actions.

The payments contemplated herein shall commence thirty (30) days after the **Effective Date** of the plan and on the fifteen (15th) day of each month thereafter until paid as contemplated under this section under the plan.

Class 5: Class 5 shall include the Equity Security Holders. This class of claims shall be cancelled and new stock issued to KEVIN SURPRISE in and for the consideration of $5,000.00

being paid by KEVIN SURPRISE to the Debtor. The stock shall be reissued in the same percentage that KEVIN SURPRISE held pre-petition. However, pursuant to the Supreme Court decision in <u>Bank Of America National Trust And Savings Association V. 203 North Lasalle Street Partnership</u>, 67 USLW 4275, 34 Bankr.Ct.Dec. 329, Bankr. L. Rep. P 77,924, 99 Cal. Daily Op. Serv. 3158, 1999 Daily Journal D.A.R. 4132, 16 Colo. Bankr. Ct. Rep. 65, 3 Cal. Bankr. Ct. Rep. 34 (May 3, 1999), any creditor or party in interest may object to confirmation and offer a higher purchase price for the shares of common stock than the proposed offer set forth herein.

<u>ARTICLE V - REJECTION AND ASSUMPTION OF EXECUTORY CONTRACTS</u>

All Executory Contracts that exist between the Debtor and any individual or entity, whether written or oral, which have not been specifically rejected by the Debtor, or otherwise provided for under the terms and conditions of this plan or otherwise rejected in writing prior to the confirmation of the Plan, are hereby specifically assumed. A creditor or party to an Executory Contract that is rejected by the Debtor shall have an additional 30 days after the Debtors' written notice of rejection is filed with the Court in which to file a Claim. The Debtor shall have 30 days after the filing of such Claim within which to object to such Claim. All Claims arising out of rejected Executory Contracts shall be treated as Class 4 Claims.

<u>ARTICLE VI - VOIDANCE OF PREFERENTIAL TRANSFERS</u>

<u>AND FRAUDULENT CONVEYANCES</u>

The Reorganized Debtor shall pursue any preferential transfers or fraudulent conveyances. The Debtor may seek to avoid preferential transfers or fraudulent conveyances, if any, following the confirmation of the Plan. All proceeds generated, net of any existing and unpaid administrative

expenses shall be distributed to Class 4 claimants in accordance with the plan.

## ARTICLE VII - RETENTION OF JURISDICTION OF THE COURT

The Bankruptcy Court shall retain jurisdiction as provided by the Bankruptcy Code and this Plan. The Court shall have the right to approve amendments to the Plan without notice, provided that the proposed amendment is at least as favorable to the creditor effected thereby in this Plan. Such jurisdiction of the Bankruptcy Court shall include, without limitation, the following:

a. To enable any party in interest and the Debtor to consummate any and all proceedings that it may bring prior to confirmation;

b. To hear and determine all Claims, including Claims arising from the rejection of any Executory Contract and any objections which may be made thereto;

c. To liquidate or estimate damages or to determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claims;

d. To adjudicate all Claims to any lien on any property of the Debtor or any proceeds thereof;

e. To adjudicate all Claims or controversies arising during the pendency of the Chapter 11 case;

f. The classification or subordination of the Claim of any creditor and the re-examination of any Claim which has been allowed for purposes of determining acceptance at the time of confirmation and the termination of such objections as may be filed to Claims. Failure of the Debtor to object or to examine any Claim for the purpose of determining acceptance shall not be deemed to be a waiver of the right to

Case 3:09-bk-05808    Doc 134    Filed 11/01/09    Entered 11/01/09 12:05:23    Desc Main
Document    Page 11 of 15

object to or re-examine the Claim in whole or in part;

g. A determination of all questions and disputes regarding title as to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to pending action as of the date of confirmation, between the Debtor and any other party, including, but not limited to any right of the Debtor to recover assets pursuant to the provisions of the Code.

h. The correction of any defect, and the curing of any omission or inconsistency in the Plan or the confirmation order as may be necessary to carry out the purposes and intent of the Plan, on notice or <u>ex parte</u>, as the Court shall determine to be appropriate;

I. The modification of the Plan after confirmation, pursuant to the Code and applicable Rules;

j. The enforcement and interpretation of the terms and conditions of the Plan; modification or extension, for cause, of the time fixed for doing any act or thing required by the Plan, on notice or <u>ex parte</u>, as the Court shall determine to be appropriate;

k. Entry of any order including any injunction necessary to enforce the title, rights, and powers of the Debtor and the Reorganized Debtor; entry of an order or orders directing the Debtor and all other persons to execute such documents as are necessary to effect the terms of the Plan; and

l. Entry of an order concluding and terminating this case, including conversion if default is certified by the Office of the United States Trustee.

Case 3:09-bk-05808    Doc 134    Filed 11/01/09    Entered 11/01/09 12:05:23    Desc Main
Document      Page 12 of 15

## ARTICLE VIII - NOTICING OF INFORMATION TO THE OFFICE OF THE UNITED STATES TRUSTEE

Post confirmation, all bank summary reports shall be provided to the Office of the United States Trustee.

## ARTICLE IX - MEANS FOR EXECUTION OF A PLAN

The Debtors considers this Plan to be fair and equitable. The Debtors plans to fund the plan from the operation of the Debtor's excavation business.

## ARTICLE X

## MODIFICATION OF THE PLAN

Modification of the Plan may be proposed in writing by the Debtor at any time before confirmation, provided that such Plan, as modified, meets the requirements of Section 1122 and 1123 of the Code, and the Debtor shall have complied with Section 1125 of the Code.

The Plan may be modified at any time after confirmation, provided that such a Plan, as modified, meets the requirements of Sections 1122 and 1123 of the Code and the Court, after notice and hearing, confirmed such Plan, as modified, under Section 1129 of the Code and the circumstances warrant such modification.

A holder of a Claim or interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless within the time fixed by the Court such holder changes its previous acceptance or rejection.

## ARTICLE XI - GENERAL PROVISIONS

A. If any payment under the Plan falls due on a non-business day, then such due date shall be extended to the next following business day.

Case 3:09-bk-05808    Doc 134    Filed 11/01/09    Entered 11/01/09 12:05:23    Desc Main
Document    Page 13 of 15

B.  Any notice hereunder shall be in writing and if by telegram or telex, shall be deemed to have been given when sent, and if mailed shall be deemed to have been given 3 business days after the date when sent by registered or

If to the Debtor: **5K UTILITY AND CONSTRUCTION, INC.**
6630 NEW NASHVILLE HWY
SMYRNA, TN 37167

With a copy to: Steven L. Lefkovitz, Esq.
Lefkovitz and Lefkovitz
Counsel to the Debtor
618 Church Street, Suite 410
Nashville, TN 37219

Or at such other address (if any) as may have been designated as an address for such purpose, or any address of such party appearing in the records of the party giving such notice.

C.  In the event that a holder of any Claim shall transfer such Claim, it shall immediately advise the Debtor in writing of such transfer, and the Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by the holder unless and until it shall have received written notice to the contrary. Each transfer of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, Debtor shall be entitled to assume conclusively that the transferred party named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor.

Respectfully submitted,
/s/ Steven L. Lefkovitz, No. 5953
Steven L. Lefkovitz
Counsel to the Debtor
618 Church Street, Suite 410
Nashville, TN 37219
(615) 256-8300 fax (615) 255-4516
Email slefkovitz@lefkovitz.com

14